Edward S. GONZALES

v.

NEW ENGLAND TRACTOR TRAILER
TRAINING SCHOOL.

Stephen C. GORDON

v.

NEW ENGLAND TRACTOR TRAILER
TRAINING SCHOOL.

Nos. K–95–1014, K–95–1015.

United States District Court,
D. Maryland.

July 10, 1996.

Joseph T. Mallon, Jr., Stephen D. Langhoff, and Silverman & Mallon, L.C., Baltimore, Maryland, for Plaintiff.

Eugene I. Glazer, Baltimore, Maryland, for Plaintiff Stephen C. Gordon.

Peter D. Guattery, Melissa L. Menkel, and Whiteford, Taylor & Preston, L.L.P., Baltimore, Maryland, for Defendant.

FRANK A. KAUFMAN, Senior District Judge.

Eighteen former and present employees of defendant New England Tractor Trailer Training School (NETTTS) instituted the first of these two cases against the said defendant. One additional plaintiff instituted the second of these two cases against the same defendant. Thereafter, the two cases were consolidated for all purposes pursuant to Federal Civil Rule 42(a). The claims in these cases are made by the said nineteen plaintiffs under the Fair Labor Standards Act (FLSA), 29 U.S.C. Section 201 *et seq.*, to recover overtime wages. Defendant has moved for summary judgment contending that, under 29 U.S.C. §§ 213(a)(1) and 213(b)(1), each and all of the claims of plaintiff in this litigation are exempt from coverage under the FLSA. For the reasons set forth in this Opinion, this Court finds itself in

agreement with the defendant and therefore will grant summary judgment to defendant.

## 1. FACTS

NETTTS conducts a for-profit school for the education and training of persons desiring to engage in the operation of over-the-road tractor trailers and trucks. NETTTS does so at five locations, located respectively in Maryland, Massachusetts, Rhode Island, Connecticut and Pennsylvania. NETTTS commenced operation in 1966. It established its school in Baltimore in 1989. All of the plaintiffs in this case were, at the time of the institution of this case, presently or formerly employed at the Baltimore location by defendant. Defendant's Baltimore school is licensed by Maryland's Higher Education Commission as a private career training school. Defendant is also accredited by the Accrediting Commission of Career Schools and Colleges of Technology, which is a nationally recognized accrediting organization for career schools. During the time frame involved in this case, all of plaintiffs were instructors at defendant's Baltimore school. Some of the instructors had supervisory duties in addition to their duties as instructors. Under applicable Maryland law and/or regulations, each of the plaintiffs, in order to perform their duties as instructors, were required to have two years or more of "successful, practical experience in the occupation or subject" and to "demonstrate up-to-date knowledge and continuing study in the field" that they were teaching. Md.Regs.Code Title 13B "Maryland Higher Education Commission," § 01.01.10A.

The instructors must also pass a written test under the supervision of the federal Department of Transportation, as well as a road test, and are subject to medical, drug and motor vehicle record checks. The students of the instructors take part in a 320 hour program over a period of ten weeks, in the classroom, on the roads and out in the field. There are numerical limits on the number of students who may take part in each class, and in programs outside of the classroom. The instruction includes information and activity concerning the use of equipment, the attainment of safety of operation of vehicles, the prevention of accidents, the use

and inspection of vehicles, map reading, and related items. The instruction in the field includes also the operation, parking, inspection, and handling of vehicles and equipment. A principle goal of the instruction is the preparation of the students to take and pass their Maryland Commercial Driver's License test and to become over-the-road drivers who are prepared to operate their vehicles safely and efficiently. NETTTS has developed a system of teaching and training, including a Driver Training Manual and the use of many materials, including written and video materials and aids. There are minimum grade averages which the students are required to attain. Most of the instructors are required to travel with students in a truck to a motor vehicle testing center in one of the five states in which NETTTS conducts its educational programs. The parties are not in agreement with regard to whether two of the plaintiffs are required to take part in any activities away from the Baltimore campus of NETTTS. Two of the plaintiffs contend that, pursuant to separate arrangements between them as individual instructors and NETTTS, they were not themselves required to take any trips away from the Baltimore campus of NETTTS. Except for those two instructors, it is undisputed that all other instructors were required to travel to one or more of the state testing centers in states other than Maryland and to accompany students on NETTTS trucks equipped with required safety and other devices which were needed for operation of the vehicles and also for utilization by the students in taking the tests at those out-of-state testing centers. Not all of the instructors, in fact, took part in such interstate travel during the time frame involved in this litigation, but they were eligible and available so to do. In view of the summary judgment context of this case at this time, this Court assumes that two of the instructors were not, as indicated *supra*, required to engage in any activities away from the Baltimore campus, but that they were required to take part in all activities at the Baltimore campus, including necessary preparation for trips by students to sites outside of Maryland. Such preparation included not only instruction and training of those students, but inspection and readying of the

trucks and equipment involved in such trips to the two out-of-state sites which trips involved the use of NETTTS trucks, and the interstate transportation of students and/or instructors and/or necessary equipment on the trucks during such interstate journeying.

## 2. STATUTORY EXEMPTIONS

Defendant NETTTS relies upon two FLSA exemptions as exempting it from the need to pay overtime pay to their instructors including the instructors who are the plaintiffs herein. At one or more times in the past, NETTTS did pay overtime to such instructors but then concluded that it was not required so to do—and ceased so to do— claiming exemption under the Motor Carrier Act exemption of Section 13(b)(1) of the FLSA (29 U.S.C. § 213(b)(1)) and the provisions of Section 13(a)(1) (29 U.S.C. § 213(a)(1)) relating to professional employees.

## 2A. MOTOR VEHICLE EXEMPTION

■ Section 13(b)(1) provides for the exemption from overtime pay requirements of any employee "with respect to whom the [federal] Secretary of Transportation has power to establish qualifications and maximum hours." In that regard, the statutory scheme set forth at 49 U.S.C. § 31502(b)[1] authorizes the Secretary of Transportation to prescribe requirements for "qualifications and maximum hours of service of employees of, and standards of equipment of, a motor private carrier, when needed to promote safety of operation." In the exercise of power under that statutory scheme, the Secretary is called upon to zero in upon the "character of the activities rather than the proportion of either the employee's time or of his activities" with emphasis upon "safety first." *Levinson v. Spector Motor Service,* 330 U.S. 649, 674–75, 677, 67 S.Ct. 931, 944– 45, 945, 91 L.Ed. 1158 (1947). *See also Pyr-*

*amid Motor Freight Corp. v. Ispass,* 330 U.S. 695, 708–09, 67 S.Ct. 954, 960–61, 91 L.Ed. 1184 (1947).

The Department of Transportation has fully asserted jurisdiction over the activities of NETTTS in Baltimore and the aforementioned locations in four other states. NETTTS is a private motor carrier; the duties of its instructors fall within the character of activities covered by 49 U.S.C. § 31502(b)(2) insofar as the assertion and exercise of regulatory authority by the Department of Transportation is concerned. All of the plaintiffs in this litigation have during the applicable time frame, engaged in interstate driving or in the preparation for the same, other than perhaps the two plaintiffs referred to above. Those two plaintiffs, it is assumed for purposes of this opinion, have not themselves journeyed out of Maryland in the performance of their job duties for NETTTS. But even they have, in the performance of their duties in Maryland for NETTTS, taken part in the preparation of students, vehicles and equipment for use in connection with activities of other instructors and of students in interstate travel between Maryland and one or more of the four other states at which NETTTS conducts its operation.

Pursuant to the provisions of 49 U.S.C. § 31502(b),[2] the Secretary of Transportation has the power to establish qualifications and maximum hours of service of employees of motor private carriers—those who transport property in interstate travel for the furtherance of the commercial purposes of the said carrier. *See* 49 U.S.C. § 13102(13).[3] The Secretary also has power to establish similar requirements for motor carriers—those who provide "motor vehicle transportation for compensation," 49 U.S.C. § 13102(12), apparently referring to carriers who transport passengers and/or property.[4] In this instance,

---

**1.** Plaintiffs seek overtime from September, 1993 to the present. This section was, prior to December 1995, numbered § 3102(b), but was identical to the present § 31502(b).

**2.** Prior to January 1, 1995, this identical provision appeared at 49 U.S.C. § 3102(b).

**3.** Prior to January 1, 1996, this identical provision appeared at 49 U.S.C. § 10102(17).

**4.** Prior to January 1, 1996, a motor carrier was defined at 49 U.S.C. § 10102(13) as a "motor common carrier" or a "motor contract carrier"; a motor common carrier was defined at 49 U.S.C. § 10102(14) as a motor carrier "holding itself out to the general public to provide motor vehicle transportation for compensation over regular or irregular routes or both"; and a motor contract carrier was defined at 49 U.S.C. § 10102(15) as a motor carrier "providing motor

each of the instructors has seemingly, as discussed *supra,* been involved in the performance of duties related to the interstate transportation of students and of other instructors, and also of vehicles and equipment upon such vehicles, in interstate activity.

The terms "passenger" and "property" are used in connection with the Motor Carrier Act exemption,[5] but are not defined therein or elsewhere in any federal statute or in any regulations issued by the Department of Transportation. The parties have briefed their presentations in this case with reference to the requirement of transportation of "property" and have ignored the question of whether or not under the facts of this case, NETTTS has been involved in transportation of "passengers." Whether the students of NETTTS, and/or the instructors of NETTTS, who are transported in a NETTTS vehicle from one of NETTTS's campuses to a testing center in a state other than the campus from and to which the students are transported are "passengers" would not appear entirely clear. The persons in those vehicles other than the driver are not persons who are paying for their passage, but nevertheless, they would clearly appear to be performing duties for NETTTS by their presence in the vehicles.

The parties have focused upon the word "property". Defendant contends that property includes the kind of items which were needed at the place of testing after the initial interstate run from Baltimore, and therefore constitute "property" needed to complete the purpose of the trip. On the other hand, plaintiffs take the position that the items are

on the truck vehicles and should be considered part of the vehicle and not have the independent status of "property" within the meaning of 49 U.S.C. § 13102(13). While there may be some slight differences in the treatment by those courts which have considered the question, on the whole, the caselaw supports a rather broad construction of the word "property" as used in § 13102(13). *See Friedrich v. U.S. Computer Services,* 974 F.2d 409, 417 (3rd Cir.1992) (tools, parts, and equipment which field engineers transported interstate and which engineers required to perform their duties was "property" for purposes of the motor carrier exemption); *Sinclair v. Beacon Gasoline Company,* 447 F.Supp. 5, 7, 10–11 (W.D.La.1976), *aff'd* 571 F.2d 978 (5th Cir.1978) (tools and parts carried by employees who traveled interstate to maintain employer's gas pipeline was "property" for purposes of the motor carrier exemption); *Harshman v. Well Service, Inc.,* 248 F.Supp. 953, 958 (W.D.Pa.1964), *aff'd* 355 F.2d 206 (3d Cir.1965) ("transportation of pumping equipment permanently mounted on defendant's truck was indispensable to the performance of the service provided by defendant" and was therefore "property" for purposes of the motor carrier exemption). *See also Crooker v. Sexton Motors, Inc.,* 469 F.2d 206, 208–210 (1st Cir.1972) (motor carrier exemption governed employee of automobile dealership whose primary duty was washing cars but who occasionally traveled interstate to take delivery of cars and parts).[6] A broad reading of the word "property" is also supported by the Supreme Court's recognition that safety is the primary concern of

vehicle transportation" of property or passengers "for compensation under continuing agreements with a person."

5. *See Levinson,* 330 U.S. at 671–72, 67 S.Ct. at 942–43 (Court relied on and approved Interstate Commerce Commission's (ICC) conclusion of law that motor carrier exemption governs certain employees involved in transportation of passengers and property in interstate or foreign commerce); 29 C.F.R. § 782.2(a) (Secretary of Transportation has authority over employees of carriers who transport property and passengers in interstate commerce) (*cited in Baez v. Wells Fargo Armored Service Corp.,* 938 F.2d 180, 181–82 (11th Cir.1991), *cert. denied,* 502 U.S. 1060, 112 S.Ct. 941, 117 L.Ed.2d 111 (1992)).

6. In *Crooker,* the First Circuit concluded that the motor carrier exemption only applied to the employee during those weeks that the employee actually traveled in interstate commerce. *Id.* at 210–11. During other weeks, the employee was entitled to overtime compensation. A similar result might be reached in this case because it appears, although the record herein does not so explicitly establish, that plaintiffs did not travel interstate each week. However, because this Court will conclude *infra* that plaintiffs are professionals who are for that reason not entitled to overtime compensation, further inquiry into the number of weeks in which plaintiffs actually traveled in interstate commerce need not be made.

the Motor Carrier Act and that it is the character of an employee's activity, i.e. the extent to which that activity affects safety, which determines whether the motor carrier exemption applies to that employee. *Levinson v. Spector Motor Service,* 330 U.S. 649, 674, 677, 67 S.Ct. 931, 945, 91 L.Ed. 1158 (1947). *See also Pyramid Motor Freight Corp. v. Ispass,* 330 U.S. 695, 708–09, 67 S.Ct. 954, 960–61, 91 L.Ed. 1184 (1947) (whether employees entitled to overtime pay depends on whether their activities affect "the safety of operation of motor vehicles in interstate or foreign commerce"). It is also supported by lower courts' broad reading of other factors involved in the determination of whether particular employees fall within the motor carrier exemption. *See Thomas v. Wichita Coca–Cola Bottling Co.,* 968 F.2d 1022, 1025 (10th Cir.), *cert. denied,* 506 U.S. 1013, 113 S.Ct. 635, 121 L.Ed.2d 566 (1992) (motor carrier exemption applied to employee who traveled only within state but who regularly collected empty containers destined for out-of-state bottling facilities); *Griffin v. Consolidated Foods Corp.,* 771 F.2d 826, 827 (4th Cir.1985) (motor carrier exemption would apply to route sales representative even if her route had been wholly intrastate because she sold goods that had traveled in interstate commerce and she could have been assigned to another route, 30% of which routes crossed state lines). For narrower construction, see *Reich v. American Driver Service, Inc.,* 33 F.3d 1153, 1157 (9th Cir. 1994) (motor carrier's reasonable expectation of engaging in interstate commerce insufficient to trigger motor carrier exemption); *Kimball v. Goodyear Tire & Rubber Co.,* 504 F.Supp. 544, 547–48 (E.D.Texas 1980) (motor carrier exemption did not apply where goods came to rest within state and interstate trips accounted for only 0.17% of all trips). However, herein, in sum, each of the instructors would appear to be performing more than sufficient duties of interstate character so as to be covered by the Motor Carrier Act exemption of 29 U.S.C. § 213(b)(1).

## 2B. PROFESSIONAL EXEMPTION

■ Each and all of the plaintiff instructors in this litigation would also seem to be exempt employees under the "professional" exemption of 29 U.S.C. § 213(a)(1) of the FLSA. A person who is a teacher falls within a "professional" exemption if, as set forth in 29 C.F.R. § 541.3, he is "teaching, tutoring, instructing or lecturing in the activity of imparting knowledge and ... is employed and engaged in this activity as a teacher in a school system or educational establishment or institution by which he is employed." The federal Secretary of Labor has set forth a "long test" for employees who are compensated at not less than $170 per week and a "short test" for employees who are compensated at less than $250 per week. Each of the instructors who are plaintiffs in this case are or were compensated in excess of $250 per week. The "short test" requirements set forth in § 541.3(e) include those whose work requires the "consistent exercise of discretion and judgment, or of work requiring invention, imagination, or talent in a recognized field of artistic endeavor."[7] Each of the instructors of NETTTS would appear to be teachers who engage in "the consistent exercise of discretion and judgment." Therefore, they meet the requirements of the "short test." A fortiori they meet the requirements of the "long test." NETTTS itself is licensed by the Maryland Higher Education Commission, and is accredited by the Accrediting Commission of Career Schools and Colleges of Technology, the latter being a nationally recognized organization. The Maryland Higher Education Commission, in one of its regulations, namely, COMAR 13B.01.01.01(C), has recognized "the special nature of the private career school sector of post-secondary education which provides a diversity of programs in occupational and

---

7. § 541.3(e) also requires that the employee be compensated on a salary or fee basis. In this case, it is not clear whether plaintiffs are paid on a salary or per hour basis. Defendant states that plaintiffs are paid a minimum of $9.00 per hour. Barna Aff. at ¶ 13. Plaintiffs do not argue that they are not professionals because they are paid on an hourly basis. Furthermore, no caselaw supports such a position or makes a distinction between hourly pay and salary. For that reason, this Court concludes that whether plaintiffs were paid a salary or were paid by the hour, plaintiffs, for reasons stated *infra* in the body of this opinion, are professionals and are therefore not entitled to overtime pay.

technical fields." NETTTS falls squarely within that definition. The fact that NETTTS is a for-profit institution is of no consequence. There is no indication in any federal or Maryland statute or regulation that an institution ceases to be a school simply because it is a for-profit organization. There is indication in the caselaw that, in order for a person to be considered a "professional" within the section 213(a)(1) exemption because he is a teacher, he must be engaged primarily in instructing students rather than in simply supervising, directing and training employees who are performing work functions. *See, e.g., Hashop v. Rockwell Space Operations, Co.,* 867 F.Supp. 1287, 1295 (S.D.Texas 1994); *Wilks v. District of Columbia,* 721 F.Supp. 1383, 1386 (D.D.C. 1989). There is little or no question but that NETTTS is in business for the purpose of teaching and that its students are at hand to be taught to become licensed over-the-road drivers, and that the instructors of its students are called upon to teach those drivers. The Secretary of Labor has included specifically, as persons classified as "teaching personnel," "teachers engaged in automobile driving instruction." 29 C.F.R. § 541.301(g)(2). It is not necessary, in order for a person to be a "professional", under the section 213(a)(1) exemption, that he teach a course of study which involves a field of a more academic nature than knowledge and capability of operating a heavy motor vehicle. That would particularly seem to be true where "safety" is so heavily involved.

The teaching practices and requirements applicable to the instructors of NETTTS would appear to be rather clearly defined and carried into effect. However, while the teaching styles do seem to be fairly well regimented, they also appear to vary somewhat and to involve considerable use of discretion on the part of each instructor. Once again, as is true with regard to the Motor Carrier Act exemption of section 213(b), there is some caselaw which lends validity to the contention that the section 213(a)(1) "professional" exemption, is not available to persons who teach along the lines of the instructors. *See, e.g., Reich v. Miss Paula's Day Care Center, Inc.,* 37 F.3d 1191, 1194–95 (6th Cir.1994) (staff of day care center were not professionals and were therefore not exempt from overtime requirements of the FLSA); *Stallings v. International School of Driving,* Nos. C–70–1718–AJZ, C–71–1209–AJZ, 20 Wage and Hour Cases (BNA) 1021, 1972 WL 970 at * 2 (N.D.Cal.1972) (driving instructors not exempt from overtime provisions of FLSA because the claimed schools were "organized and operated primarily as businesses" and the instructors were too much involved as outside businessmen and did not possess sufficient teaching character). *But see Paul v. Petroleum Equipment Tools Company,* 708 F.2d 168, 169, 173 (5th Cir. 1983) (airplane pilot who earned monthly salary of at least $1700 and who engaged in "prolonged course of specialized instruction" exempt from overtime requirements of the FLSA).

## CONCLUSIONS

Each and all of the instructors are, in the view of this Court, teachers who are "professionals" within the meaning of 29 U.S.C. § 213(a)(1). For that reason and because each of the said instructors is also exempt under the Motor Carrier Exemption of 29 U.S.C. § 213(b)(1), each of the plaintiffs is exempt from the overtime provisions of the FLSA. Therefore, the defendant is entitled to the grant of summary judgment in connection with each and all of the claims of plaintiffs in this litigation.