**Anthony TURK, individually and on behalf of a class of employees similarly situated, Plaintiff,**

v.

**BUFFETS, INC., and Old Country Buffet, Inc., Defendants.**

No. 95 C 6296.

United States District Court, N.D. Illinois, Eastern Division.

Sept. 20, 1996.

Ernest Thomas Rossiello, Margaret Ann Zuleger, Rossiello & Associates, Chicago, IL, for Anthony Turk.

James M. Gecker, Harry John Secaras, Katten, Muchin & Zavis, Chicago, IL, Ronald J. Lee, Faegre & Benson, Minneapolis, MN, for Old Country Buffet, Inc.

## MEMORANDUM OPINION AND ORDER

GETTLEMAN, District Judge.

Plaintiffs Anthony Turk, Jeffrey Reed and Steven Mercer, individually and on behalf of a class of employees similarly situated, filed a complaint against defendants Buffets, Inc. ("Buffets") and Old Country Buffet, Inc., alleging that by willfully not paying them overtime wages, defendants violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a)(1), the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1 *et seq.*, and the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115/1 *et seq.*[1] Plaintiffs seek to recover back wages, prejudgment interest, and liquidated damages under section 216(b) of the FLSA, and a two percent punitive penalty under section 105/12 of the IMWL. Defendant Buffets has filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(c), asserting that plaintiffs were exempted from the overtime provisions under the FLSA's motor-carrier exemption in section 213(b)(1).[2] For the reasons set forth below, the court grants defendant's motion.

## FACTS

Defendant owns and operates a chain of Old Country Buffet restaurants throughout the United States. Plaintiffs Anthony Turk, Jeffrey Reed, and Steven Mercer were employed by defendant as service technicians. Plaintiffs' primary job duties were to evaluate, service, and maintain equipment located at various restaurants owned by defendant. Plaintiffs were not paid any overtime wages while employed by defendant.

Plaintiff Turk, employed by defendant from March 1992 to February 15, 1995, performed maintenance and service repairs for thirteen restaurants in Illinois and one restaurant in Indiana. Mr. Turk spent only five to ten percent of his time in Indiana. To perform his duties, Mr. Turk initially drove a GMC van owned by defendant which weighed less than 10,000 pounds when loaded with repair equipment. Later in his employment, Mr. Turk drove a Ford E–350 extended-bed van which weighed less than 12,000 pounds when loaded.

1. Plaintiff Turk initiated the lawsuit and Reed and Mercer subsequently joined in the action pursuant to the "opt-in" provision of 29 U.S.C. § 216(b).

2. Plaintiffs sued both Buffets and an entity they called Old Country Buffet, Inc. In its answer, Buffets has indicated that it is doing business as Old Country Buffet and that there is no legal entity called Old Country Buffet, Inc. Accordingly, only Buffets has moved to dismiss the complaint.

Plaintiff Reed, employed by defendant from October 1994 to January 24, 1996, performed maintenance and service repairs for five restaurants in Ohio and three restaurants in Pennsylvania. Mr. Reed traveled to Pennsylvania approximately twice a month. To perform his duties, Mr. Reed drove a Ford van owned by defendant which weighed less than 5,000 pounds when loaded with repair equipment.

Plaintiff Mercer, employed by defendant from May 1994 to January 17, 1996, performed maintenance and service repairs for thirteen restaurants in Colorado and one restaurant in Wyoming. Mr. Mercer spent less than five percent of his time in Wyoming. To perform his duties, Mr. Mercer also drove a Ford van owned by defendant which weighed less than 5,000 pounds when loaded with repair equipment. Mercer also worked overtime hours performing computer work at home.

Plaintiffs carried their personal tool kits on the job, as required by defendant. Plaintiffs also carried repair equipment owned by defendant. Prior to 1995, defendant often, but not always, shipped replacement parts directly to the restaurants where needed.

In 1995, another Buffets service technician filed a complaint with the United States Department of Labor ("DOL") charging that defendant had failed to pay him overtime wages as mandated by the FLSA. After performing a self-audit, defendant paid several of its service technicians retroactively for overtime hours worked between September 1993 and August 1995. Defendant did not pay plaintiffs retroactively for overtime hours worked during this period because defendant concluded that plaintiffs were exempted from the FLSA overtime provision under the motor-carrier exemption. The only difference between the job duties of plaintiffs and those service technicians that were paid retroactively for their overtime hours is that plaintiffs were required to drive

across state lines. In 1995, defendant began shipping replacement parts to service technicians' homes and requiring the technicians to carry them to the restaurants in the vans.

## DISCUSSION

Under Federal Rule of Civil Procedure 56(c), a court should grant a summary judgment motion if "there is no genuine issue of material fact and ... the moving party is entitled to judgment as a matter of law." The burden is on the moving party to identify portions of the pleading, answers to interrogatories, and affidavits which demonstrate an absence of a genuine issue of material fact. *Id.; Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(c). When reviewing a summary judgment motion, the court must read the facts in a light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). The court's role "is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact." *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir.1994).

Congress enacted the Motor Carrier Act ("MCA") in 1935 to promote efficiency, economy, and safety in the motor transportation industry. *United States v. American Trucking Ass'ns, Inc.*, 310 U.S. 534, 538–39, 60 S.Ct. 1059, 1061, 84 L.Ed. 1345 (1940); *Friedrich v. U.S. Computer Services*, 974 F.2d 409, 412 (3rd Cir.1992). Under the MCA, the Interstate Commerce Commission ("ICC") was granted regulatory power over the employees of motor carriers,[3] and motor private carriers. 49 U.S.C. App. § 304(a) (repealed).[4] In 1966, Congress transferred

---

**3.** "Motor carriers" include both "motor common carriers" and "motor contract carriers." *See* 49 U.S.C.App. § 10102(13). There is no dispute in this case that defendant is neither a motor common carrier nor a motor contract carrier.

**4.** Section 304 of Title 49 was repealed in 1983 and recodified without substantive change as 49 U.S.C. § 3102. Pub.L. No. 97–449, § 7(b), 96 Stat. 2444. In 1994, this section was recodified without substantive change to 49 U.S.C.App. § 31502. Pub.L. No. 103–272, § 1(c), 108 Stat. 745.

this regulatory power to the Department of Transportation ("DOT"). P.L. 89–670, § 6(e)(6)(C), 80 Stat. 939; 49 U.S.C. App. § 1655(e)(6)(C). Specifically, the relevant statute provides:

> The Secretary of Transportation may prescribe requirements for—
>
> (1) qualifications and maximum hours of service of employees of, and safety of operation and equipment of, a motor carrier; and
>
> (2) qualifications and maximum hours of service of employees of, and safety of operation and equipment of, a motor private carrier, when needed to promote the safety of operation.

49 U.S.C. App. § 31502(b). The defendant claims to be a motor private carrier, defined by the MCA as:

> a person, other than a motor carrier, transporting property by motor vehicle when—
>
> (A) the transportation is as provided in section 10521(a)(1) and (2) of this title [i.e., the transportation is in interstate commerce];
>
> (B) the person is the owner, lessee, or bailee of the property being transported; and
>
> (C) the property is being transported for sale, lease, rent, or bailment, or to further a commercial enterprise.

49 U.S.C. App. § 10102(16).

In 1938, Congress enacted the FLSA to protect covered workers from "substandard wages and oppressive working hours." *Barrentine v. Arkansas–Best Freight Sys., Inc.*, 450 U.S. 728, 739, 101 S.Ct. 1437, 1444, 67 L.Ed.2d 641 (1981). The overtime provision of the FLSA provides, in pertinent part, that,

> no employer shall employ any of his [or her] employees for a workweek longer than 40 hours unless such employee receives compensation for his [or her] employment in excess of (forty) hours ... at a rate not less than one and one-half the regular rate at which he [or she] is employed.

29 U.S.C. § 207(a)(1).

■ To preserve the safety program promoted by the MCA, Congress prohibited dual regulatory jurisdiction of the ICC and the DOL by exempting from the FLSA overtime provision those employees for whom the ICC (now, the DOT) may set maximum hours of service. *Levinson v. Spector Motor Service*, 330 U.S. 649, 661, 67 S.Ct. 931, 938, 91 L.Ed. 1158 (1947). The exception, in its current form, 29 U.S.C. § 213(b), states:

> [t]he provisions of section 207 ... shall not apply with respect to—
>
> (1) any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of [section 31502] of Title 49.

The DOT retains its jurisdiction over the specified employees regardless of whether it has chosen to actually exercise its regulatory authority, and the overtime exemption applies to such employees despite the lack of DOT regulation. *Southland Gasoline Co. v. Bayley*, 319 U.S. 44, 47, 63 S.Ct. 917, 919, 87 L.Ed. 1244 (1943); *Levinson*, 330 U.S. at 661, 67 S.Ct. at 938.

■ An employer claiming an overtime exemption bears the burden of proving that it applies to its employees. *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 394 n. 11, 80 S.Ct. 453, 457 n. 11, 4 L.Ed.2d 393 (1960); *Martin v. Cooper Elec. Supply Co.*, 940 F.2d 896, 900 (3d Cir.1991), *cert. denied*, 503 U.S. 936, 112 S.Ct. 1473, 117 L.Ed.2d 617 (1992). Further, these exemptions are construed narrowly against employers and application must be demonstrated "plainly and unmistakably." *Arnold*, 361 U.S. at 392, 80 S.Ct. at 456; *see also Bankston v. State of Illinois*, 60 F.3d 1249, 1252 (7th Cir.1995).

Defendant asserts that the motor-carrier exemption to the FLSA overtime provision applies to plaintiffs. Defendant claims to be a motor private carrier as defined by the MCA because: (1) it transported property in interstate commerce; (2) the property, repair equipment and replacement parts, were owned by defendant; and (3) the property

was transported in furtherance of its commercial enterprise. *See* 49 U.S.C. App. § 10102(16). Because the Secretary of Transportation retains the power to regulate the qualifications and maximum hours of service for employees of motor private carriers when needed to promote the safety of operation, defendant argues that plaintiffs were exempted from coverage by the FLSA overtime provision. In support of its position, defendant points to several cases where courts have held that maintenance and service employees who drove employer-owned vehicles containing employer-owned property across state lines were exempt from the overtime requirement. *See Friedrich*, 974 F.2d at 410 (field engineers servicing computer hardware who routinely transported tools, parts, and equipment to customer sites in several states were subject to the motor-carrier exemption); *Peraro v. Chemlawn Services Corp.*, 692 F.Supp. 109 (D.Conn. 1988) (employees driving specially equipped trucks to out-of-state locations to provide carpet cleaning services were exempted from the overtime requirement); *Sinclair v. Beacon Gasoline Co.*, 447 F.Supp. 5 (W.D.La. 1976) (field employees carrying tools and equipment in company-owned trucks across state lines to maintain and repair a natural-gas pipeline were exempted from the FLSA overtime provision), *aff'd*, 571 F.2d 978 (5th Cir.1978); *Harshman v. Well Service, Inc.*, 248 F.Supp. 953 (W.D.Pa.1964) (plaintiffs who drove and performed maintenance on pump trucks that carried special equipment for cementing gas wells located in several states were subject to the motor-carrier exemption), *aff'd*, 355 F.2d 206 (3rd Cir.1965).

In response, plaintiffs first argue that defendant is not a motor private carrier. They contend that the transportation of repair equipment and replacement parts in the vans was incidental to the primary purpose of transporting themselves and their expertise to the restaurants and was, therefore, not transportation of property within the meaning and intention of the MCA. Plaintiffs adopt the reasoning of Chief Judge Sloviter, who stated in his dissenting opinion in *Friedrich* that the "incidental carriage" of tool kits and computer replacement parts by field engineers was insufficient to render their employer a motor private carrier. 974 F.2d at 419; *see also* the dissenting opinion in *Morris v. McComb*, 332 U.S. 422, 438, 68 S.Ct. 131, 139, 92 L.Ed. 44 (1947) (Murphy, J., dissenting, joined by Black, J., and Douglas, J.) (arguing that employees who spent only three to four percent of their time in activities affecting safety in interstate commerce should not be excluded from overtime protection of the FLSA). Judge Sloviter noted the DOL's position in its Field Operations Handbook that when " 'incidental transportation of property is not significant as a reason for the trip' the DOT lacks jurisdiction." *Id.* at 420 (quoting DOL Field Operations Handbook §§ 24a05(c) (May 13, 1982)). He also reasoned that the focus of the MCA was safety, and that the effect on safety by sales or repair persons driving lightweight vehicles and carrying equipment was no different than those who did not carry equipment. *Friedrich*, 974 F.2d at 421 (Sloviter, J., dissenting). Judge Sloviter, like Justice Murphy before him, feared that the majorities' "overly literal" interpretations produced an anomalous result that might encourage employers to circumvent the FLSA overtime requirements by requiring any employees driving lightweight vehicles to carry small amounts of equipment or spare parts. *Id.* at 421–22; *see also Morris*, 332 U.S. at 440, 68 S.Ct. at 139 (Murphy, J., dissenting).

When a court interprets statutory provisions, it is necessary to first analyze the language of the statute itself. *Landreth Timber Co. v. Landreth*, 471 U.S. 681, 685, 105 S.Ct. 2297, 2301, 85 L.Ed.2d 692 (1985); *In re Maxway Corp.*, 27 F.3d 980, 982 (4th Cir.1994). " 'If the statutory language is unambiguous, in the absence of a clearly expressed legislative intent to the contrary, that language must ordinarily be regarded as conclusive.' " *Russello v. United States*, 464 U.S. 16, 20, 104 S.Ct. 296, 299, 78 L.Ed.2d 17 (1983) (quoting *United States v. Turkette*, 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981)), (quoting *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980)) (internal quotes omitted). In seeking to understand a statutory scheme, the court will start with the assump-

tion that the legislative purpose is expressed by the ordinary meaning of the words used. *Richards v. United States,* 369 U.S. 1, 9, 82 S.Ct. 585, 590–91, 7 L.Ed.2d 492 (1962). Thus, "unambiguous statutory text prevails over arguments based on statutory history and purpose." *Vaughn v. Sullivan,* 83 F.3d 907, 910 (7th Cir.1996).

■ The plain language of the MCA precisely defines a motor private carrier as one who: (1) transports property by motor vehicle in interstate commerce; (2) is the "owner, lessee, or bailee" of the property; and (3) transports the property for "sale, lease, or bailment, or to further a commercial enterprise." 49 U.S.C. App. § 10102(16). Neither the statute nor authoritative interpretation qualifies the transported property in terms of whether it is incidental or necessary to the purpose of the owner. The statute requires only that the property be transported in furtherance of a commercial enterprise. The transportation of defendant's repair equipment and spare parts across state lines to service its restaurants meets the statutory definition. Plaintiffs point to no authority that would lead to a different result, and this count can find none.

■ Plaintiffs were exempted from the FLSA overtime provision for all hours worked despite the fact that interstate driving consumed less of their time and responsibilities than did their other duties.[5] "It is not a question of fundamental concern whether or not it is the larger or the smaller fraction of the employee's time or activities that is devoted to safety work. It is the character of the activities rather than the proportion of either the employee's time or of his activities that determines the actual need for the [DOT]'s power to establish reasonable requirements with respect to qualifications, maximum hours of service, safety of operation and equipment." *Levinson,* 330 U.S. at 674–75, 67 S.Ct. at 944; *see also Friedrich,* 974 F.2d at 418 (field engineers fell within the MCA even though they devoted more time to field service than to the transportation of property and were not employed primarily as carriers).

Thus, defendant is a motor private carrier within the meaning of the MCA, and plaintiffs were exempted from the FLSA overtime provision. Although the regulation of the type of service employee found in the present case is perhaps not the focus of the MCA or DOT regulation, and despite the possibly unfair circumvention of FLSA overtime requirements by some employers, it is the duty of Congress, not this court, to limit the jurisdiction of the DOT or expand the power of the DOL. *See Friedrich,* 974 F.2d at 419.

Plaintiffs argue alternatively that their involvement in interstate commerce was *de minimis,* and that therefore they were not subject to the jurisdiction of the DOT. In *Pyramid Motor Freight Corp. v. Ispass,* 330 U.S. 695, 708, 67 S.Ct. 954, 960, 91 L.Ed. 1184 (1947), the Court remanded with instructions that if the mere handling of freight before loading formed a "trivial, casual or occasional a part of an employee's activities," and did not affect the safety of operation, then the activity would not serve to bring the employees under the motor-carrier exception.

■ Courts have, however, generally held that the *de minimis* rule does not exempt *drivers* from DOT jurisdiction. In *Morris,* the Supreme Court held that truck drivers and mechanics spending only four percent of their time in activities affecting interstate commerce were exempt from the FLSA overtime provision. 332 U.S. at 423–24, 68 S.Ct. at 132. In *Crooker v. Sexton Motors, Inc.,* 469 F.2d 206, 210 (1st Cir.1972), the court observed:

> The *de minimis* rule has been applied ... where the employee's connection with anything affecting interstate motor carrier operations was so indirect and casual as to be trivial.... The activities of one who drives in interstate commerce, however frequently or infrequently, are not trivial. Such activities directly affect the safety of motor vehicle operations.

(citation omitted). In cases where the *de minimis* rule was found to apply to drivers,

---

**5.** The exemption applies to all of plaintiffs' work weeks, even to any weeks when no safety-affect-

ing activities were performed. 29 C.F.R. § 782.2(b)(3).

the drivers spent less than one percent of their time in interstate travel. See *Kimball v. Goodyear Tire and Rubber Co.*, 504 F.Supp. 544, 549 (E.D.Tex.1980) (holding that truck drivers were not exempted from the overtime provision where only 0.17% of trips were interstate); *Coleman v. Jiffy June Farms, Inc.*, 324 F.Supp. 664, 670 (S.D.Ala. 1970) (drivers were not subject to the motor-carrier exemption where only 0.23% of the activity was interstate), *aff'd*, 458 F.2d 1139 (5th Cir.1971), *cert. denied*, 409 U.S. 948, 93 S.Ct. 292, 34 L.Ed.2d 219 (1972). Plaintiffs in the present case spent more than one percent of their working time in interstate driving, and their activities did affect the safety of motor vehicle operations. Therefore, the *de minimis* rule does not apply.

## CONCLUSION

Defendant is a motor private carrier as defined by 49 U.S.C.App. § 10102(16), and plaintiffs were subject to the regulatory authority of the DOT. Plaintiffs were therefore exempted from the FLSA overtime provision under 29 U.S.C. § 213(b). Plaintiffs' state law claim fails as well because the IMWL excludes from its definition of "employee" those individuals for whom the DOT has jurisdiction under the MCA. 820 ILCS 105/3(d)(7). Defendant's motion for summary judgment is granted.