**Jerry ANDERSON, individually and as a representative of all others similarly situated, Plaintiff,**

v.

**TIMBER PRODUCTS INSPECTION, INC., a Georgia corporation, Defendant.**

**Civil No. 02–961–MO.**

United States District Court,
D. Oregon.

Sept. 13, 2004.

Aaron W. Baker, Attorney at Law, James Edward McCandlish, Mark E. Griffin, Griffin McCandlish, Portland, OR, for Plaintiff.

Clay D. Creps, John M. Kreutzer, Seth H. Row, Bullivant Houser Bailey PC, Portland, OR, for Defendant.

## OPINION AND ORDER

MOSMAN, District Judge.

Plaintiff Jerry Anderson is the named plaintiff for this Fair Labor Standards Act ("FLSA") representative action brought on behalf of himself and his coworkers (collectively, "plaintiffs") and against defendant Timber Products Inspection, Inc. Plaintiffs seek recovery for wages allegedly due under FLSA's overtime provisions as well as Oregon's similar provisions. Defendant moved for summary judgment, arguing that plaintiffs were exempt from overtime-wage requirements pursuant to the "Motor Carrier Act exemption." The court agrees with defendant and thus grants its motion for summary judgment. (Doc. # 51).

## I.

Defendant Timber Products Inspection, Inc. is a lumber and wood products inspection company. Defendant employed plaintiffs as field representatives to perform lumber-inspection services to determine the appropriate grading for defendant's lumber. Plaintiffs agree their employment involved services implicating interstate commerce. For instance, during the course of their employment, plaintiffs would travel interstate by car or air carrier. In traveling interstate, plaintiffs at times would carry tools provided by defendant and used in inspecting lumber (although not all the tools were necessary for every inspection). The tools included drills, increment bits, tape measures, hammers, moisture meters, plugs, trays, and testing chemicals.

Plaintiffs allege they regularly worked more than forty hours per week, but were not paid any overtime wages. Plaintiffs, therefore, filed this lawsuit seeking recovery under FLSA, 29 U.S.C. § 216(b), and Oregon's overtime-wage provisions, see ORS 653.055 and 653.261.

On May 12, 2004, defendant moved for summary judgment arguing that, as a matter of law, plaintiffs are not entitled to overtime wages. Specifically, defendant argues both FLSA and Oregon law establish a motor-carrier exemption which bars plaintiffs' claim for overtime wages.

## II.

FLSA requires employers to compensate covered workers a minimum of one and one-half times the workers' hourly wages for hours exceeding forty hours worked in a single week. 29 U.S.C. § 207(a)(1). Congress, however, exempted from this overtime requirement "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49 [*i.e.*, the Motor Carrier Act]." 29 U.S.C. § 213(b). This statutory provision is generally called the "motor carrier exemption." One of the exemption's underlying purposes is to "preserve the safety program promoted by the" Motor Carrier Act by avoiding "dual regulatory jurisdiction" of the Department of Transportation and the Department of Labor. *Turk v. Buffets, Inc.*, 940 F.Supp. 1255, 1259 (N.D.Ill.1996) (citing *Levinson v. Spector Motor Service*, 330 U.S. 649, 661, 67 S.Ct. 931, 91 L.Ed. 1158 (1947)). Thus employees subject to the Department of Transportation's jurisdiction cannot recover overtime wages under FLSA. The fact the Department of Transportation may not have affirmatively chosen to regulate particular employees does not make the motor-carrier exemption inapplicable. See *Levinson*, 330 U.S. at 661, 67 S.Ct. 931; *Turk*, 940 F.Supp. at 1259.

The Motor Carrier Act gives the Secretary of Transportation jurisdiction to regulate, among other things, the hours worked by motor carriers' employees:

The Secretary of Transportation may prescribe requirements for—

(1) qualifications and maximum hours of service of employees of, and safety of operation and equipment of, a motor carrier; and

(2) qualifications and maximum hours of service of employees of, and standards of equipment of, a *motor private carrier*, when needed to promote safety of operation.

49 U.S.C. § 31502(b) (emphasis added).

Defendant argues it qualifies as a "motor private carrier" within the scope of the Motor Carrier Act, thereby implicating FLSA's motor-carrier exemption. The Motor Carrier Act establishes a relatively broad definition for the term "motor private carrier":

a person other than a motor carrier, *transporting property by motor vehicle* when—

(A) the transportation is as provided in section 13501 of this title [interstate transportation];

(B) the person is the owner, lessee, or bailee of the property being transported; and

(C) the property is being transported for sale, lease, rent, or bailment or *to further a commercial enterprise.*

49 U.S.C. § 13102(13) (emphasis added).

■ The employer carries the burden of proving "plainly and unmistakably" that its employees come within the motor-carrier exemption. *Friedrich v. United States Computer Serv.,* 974 F.2d 409, 412 (3d Cir.1992) (citing *Martin v. Cooper Elec. Supply Co.,* 940 F.2d 896, 900 (3d Cir. 1991)). Courts have identified two requirements for the exemption to apply: (1) the employees' employer is subject to the Motor Carrier Act (*e.g.,* is a motor private carrier), and (2) the employees engaged in activities directly affecting the safety of operation of motor vehicles in interstate commerce. See, e.g., *Peraro v. Chemlawn Services Corp.,* 692 F.Supp. 109, 112 (D.Conn.1988) (citing 29 C.F.R. § 782.2(a)).

As mentioned, a motor private carrier includes an employer who owns property which is transported interstate to further a commercial enterprise. 49 U.S.C. § 13102(13). The Motor Carrier Act does not define what "property" means, thus causing some debate among the courts about the scope of that term. See *Friedrich,* 974 F.2d at 417. Several cases reason that the term "property," at the very least, includes those items "without which [the employees] could not have performed their duties." *Id.;* see *Gonzales v. New England Tractor Trailer Training Sch.,* 932 F.Supp. 697, 700–01 (D.Md.1996) (citing cases). Some judges have treated the

term "property" more narrowly. See, e.g., *Friedrich,* 974 F.2d at 420 (Sloviter, C.J., dissenting) (arguing "property" does not include transportation of property which was "wholly ancillary to [the employees'] need to transport themselves to customer sites," and criticizing majority's "overly literal approach to the issue"). On the whole, however, "the caselaw supports a rather broad construction of the word 'property' as used in" the definition of motor private carrier. *Gonzales,* 932 F.Supp. at 700.

For instance, the Third Circuit in *Friedrich* concluded that tools, parts, and equipment transported by the employees constituted "property"—although the employees' special skills constituted the core of their services—because the employees needed the items to perform the services. *Friedrich,* 974 F.2d at 417. Other cases take a similar view of property. See, e.g., *Turk,* 940 F.Supp. at 1261 (finding that repair equipment and spare parts used to service restaurants and transported interstate qualified as property); *Gonzales,* 932 F.Supp. at 698, 700 (finding that safety and other devices attached to vehicles used for truck-driving instruction qualified as property, because the devices were needed for the operation of the vehicles and test-taking purposes); *Sinclair v. Beacon Gasoline Co.,* 447 F.Supp. 5, 8 (W.D.La.1976) (holding tools, equipment, and supplies transported interstate and used to repair and maintain pipeline systems constituted property), *aff'd,* 571 F.2d 978 (5th Cir. 1978). While some may quarrel with courts' giving a plain and thus broad meaning to the term property, thereby removing many employees from the scope of FLSA overtime protections, "the legislature and not the judicial branch of government has the responsibility to expand the [Department of Labor's] regulatory power." *Friedrich,* 974 F.2d at 419.

■ Giving the term property its ordinary meaning, as the court feels compelled to do, defendant Timber Products qualifies as a motor private carrier. Plaintiffs do not dispute their jobs required them to travel interstate while carrying tools owned by defendant. And, while plaintiffs argue the tools were not "an independent and essential reason for the interstate trip," they do not dispute that at least some of the tools were required to perform their jobs. The court, therefore, cannot meaningfully distinguish the case law discussed above.[1] The court also rejects plaintiffs' unsupported assertion that "property" includes only replacement parts or specially equipped trucks. There is no legislative or regulatory authority suggesting such a specific and narrow definition; thus, the court is not at liberty to adopt it. Cf. *Friedrich v. U.S. Computer Services*, 787 F.Supp. 449, 457 n. 10 (E.D.Penn.1991) (explaining that, even though FLSA exemptions are to be narrowly construed, "this general maxim is alone insignificant if the broad and specific language of an exemption admits no clear principled means for narrowing"), *aff'd*, 974 F.2d 409 (3d Cir.1992). In sum, plaintiffs were employed by a motor private carrier, thus meeting the first element of the motor-carrier exemption.

■ The next issue is whether plaintiffs engaged in activities affecting the safety of operation of motor vehicles in interstate commerce. In answering this issue, the key factor is the "character" of the employees' activities, not the proportion of time spent engaged in activities directly affecting interstate safety. See *Levinson*, 330 U.S. at 674–75, 67 S.Ct. 931. The guiding inquiry "is whether a particular employee's duties have a substantial effect on the safety of operation of motor vehicles transporting property in interstate commerce." *Sinclair*, 447 F.Supp. at 9 (citing *Levinson*, 330 U.S. at 656, 67 S.Ct. 931).

Although courts have recognized a *de minimis* exception, that exception has force, at least as applied to drivers, only when the interstate-travel portion of the employees' work can be characterized as "infinitesimal." *Peraro*, 692 F.Supp. at 114. As observed by one court, in those cases in which the *de minimis* exception has been applied, the employees had "spent less than one percent of their time in interstate travel." *Turk*, 940 F.Supp. at 1261. Thus, in *Friedrich*, it was not determinative that employees spent more time in field service than in the transportation of property; "their interstate operations affected safety on the highways ... even though they were not employed primarily as carriers." *Friedrich*, 974 F.2d at 418. And, in *Peraro*, the district court found that a carpet-cleaning company's employees affected safety in interstate commerce although the percentage of time they spent driving interstate ranged among the employees from six percent to forty-six percent. *Peraro*, 692 F.Supp. at 114. In sum, the "activities of one who drives in interstate commerce, however frequently or infrequently, are not trivial. Such activities directly affect the safety of motor

---

1. The case law plaintiffs cite is easily distinguished from the case at bar. In *Carpenter v. R.M. Shoemaker Co.*, No. 00–5644, 2002 WL 987990, at *7 (E.D.Pa. May 6, 2002), the defendant failed to establish that it owned the tools which the plaintiff employee had transported interstate. Here, in contrast, there is no dispute defendant Timber Products owned the property at issue. *Bowe v. SMC Electrical Products, Inc.*, 935 F.Supp. 1126 (D.Colo. 1996), also is inapposite. In that case, the defendant failed to provide sufficient evidence of the employee's "transportation of company property in interstate commerce." *Id.* at 1131–32. In the case at bar, plaintiffs admit they regularly transport to other states tools owned by defendant and needed to perform their duties.

vehicle operations." *Crooker v. Sexton Motors, Inc.,* 469 F.2d 206, 210 (1st Cir. 1972).

 Because the plaintiffs here undisputably drove interstate as part of their duties, it does not take much to find they directly affected the safety of interstate operation of motor vehicles. See *Turk,* 940 F.Supp. at 1261 ("Courts have ... generally held that the *de minimis* rule does not exempt *drivers* from [Department of Transportation] jurisdiction." (emphasis in original)). At their depositions, plaintiffs indicated they were required to travel interstate on a regular basis, usually at least once a month and commonly much more often, such as when customers were experiencing problems. See, e.g., Anderson Depo. at 124; Clark Depo. at 74–75; Chapman at 68; Quinn Depo. at 61–62. Just as it was not determinative that the employees in *Friedrich* spent more time in field service than transporting property, it is not determinative that plaintiffs here spent more time inspecting lumber than transporting property from state to state. In any case, even if some of the plaintiffs had only visited two out-of-state customers once a month—to take a conservative estimate—the percentage of their work time spent in interstate travel would have surpassed the one-percent rule of thumb suggested in *Turk* and thus be too great to meet the narrow *de minimis* exception. See *Turk,* 940 F.Supp. at 1262. Indeed plaintiffs do not dispute that their interstate travel was more than just *de minimis.* In sum, defendant has shown that the plaintiffs directly affected safety in interstate commerce.

### III.

For the reasons briefly discussed above, defendant has conclusively established that the motor-carrier exemption bars plaintiffs' FLSA claim for overtime compensation. Plaintiffs' state-law claim is barred for the same reason. See OAR 839–020– 0125(3) (adopting federal motor-carrier exemption). While this case involves the type of line-drawing which inevitably frustrates litigants, it is not for the court to alter the line drawn by Congress.

Because the motor-carrier exemption applies, the court need not consider defendant's statute-of-limitations defense. In short, defendant's motion for summary judgment (doc. # 51) is GRANTED, and this case is dismissed with prejudice. Pending motions, if any, are dismissed as moot.

IT IS SO ORDERED.