Roger W. CROOKER, Plaintiff, Appellee,

v.

SEXTON MOTORS, INC., Defendant,
Appellant.

No. 72–1183.

United States Court of Appeals,
First Circuit.

Argued Sept. 6, 1972.

Decided Nov. 2, 1972.

Kevin F. Sullivan, Nashua, N. H., with whom Sweeney, Sweeney & Sulli-van, Nashua, N. H., was on brief, for appellant.

John P. Griffith, Nashua, N. H., with whom Hamblett, Kerrigan, LaTourette & Lopez, Nashua, N. H., was on brief, for appellee.

Before COFFIN, Chief Judge, McENTEE and HAMLEY,* Circuit Judges.

HAMLEY, Circuit Judge.

Roger W. Crooker brought this action against his former employer, Sexton Motors, Inc. (Sexton), to recover unpaid overtime compensation for services rendered to Sexton. Crooker asserted district court jurisdiction under section 7(a)(1) and 16(b) of the Fair Labor Standards Act (Act), 29 U.S.C. §§ 207(a)(1) and 216(b).[1] Sexton defended on the ground that it was exempt from the provisions of 29 U.S.C. § 207, pertaining to maximum hours, by reason of the transportation exemption contained in section 13(b)(1) of the Act, 29 U.S.C. § 213(b)(1).[2]

---

\* Of the Ninth Circuit, sitting by designation.

1. 29 U.S.C. § 207(a)(1) provides:

"Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

29 U.S.C. § 216(b) provides, in part:

"Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation as the case may be, and in an additional equal amount as liquidated damages. Action to recover such liability may be maintained in any court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. . . ."

2. 29 U.S.C. § 213(b)(1), as amended in 1966 (80 Stat. 943) provides, in part, that the provisions of 29 U.S.C. § 207 shall not apply with respect to

"any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 304 of Title 49;"

Section 304(a)(3) of Title 49 provides that it shall be the duty of the Commission (now the Secretary of Transportation):

"To establish for private carriers of property by motor vehicle, if need therefor is found, reasonable requirements to promote safety of operation, and to that end prescribe qualifications and maximum hours of service of employees, and standards of equipment. In the event such requirements are established, the term 'motor carrier' shall be construed to include private carriers of property by motor vehicle in the administration of subsection (c) of this section and sections 305, 320, 321, 322(a), (b), (d), (f), and (g), and 324 of this title."

The term "private carrier" is defined as follows in 49 U.S.C. § 303(a)(17):

"The term 'private carrier of property by motor vehicle' means any person not

The parties stipulated that the amount of overtime due, if any, amounts to $1,-125, and filed cross-motions for summary judgment. An evidentiary hearing was held at which a genuine issue of material fact developed concerning the number of times Crooker drove in interstate commerce for Sexton in connection with his employment. Accordingly, the district court did not specifically act upon the motions for summary judgment, and apparently entered judgment upon the basis of a trial on the merits.

The district court entered judgment for Crooker in the amount of $1,125 plus liquidated damages in the same amount plus reasonable attorneys' fees and costs in the amount of $701.64, for a total of $2,951.64. The district court held that the exemption contained in 29 U.S.C. § 213(b)(1) did not apply because: (1) even on defendant's testimony (by Mr. Sexton) that Crooker made a business trip once a week from Sexton's place of business at Nashua, New Hampshire to various points in Massachusetts, this "would not be a substantial part of the plaintiff's activities and could have no real effect on safety or health," and (2) the extent to which Crooker's employment activity affected the safety of interstate motor operations was *de minimis*.

Sexton appeals, urging in effect that the district court failed to apply the correct test in determining whether the 29 U.S.C. § 213(b)(1) exemption applies and that, under the facts, the *de minimis* is principle is inapplicable.

Sexton is engaged in interstate commerce at Nashua, New Hampshire. It there operates an automobile dealership with a service department and body shop. Crooker started to work for Sexton in October of 1968 and continued this work through the week of August 4, 1971. His primary duty was to clean and polish cars. However, on occasion, Sexton sent him to various places in Massachusetts, all within a radius of sixty miles of the place of business, to take delivery of new or used cars, or automobile parts, for transportation to Nashua. During all of his employment Crooker received compensation at the straight time rate of three dollars an hour. He received no compensation at overtime rates although he worked an average of a little over two hours a week in excess of forty hours.

Neither side was able to produce any records with regard to the number of interstate business driving trips Crooker took, or the number of hours in which he engaged in interstate driving. Crooker had stated, in pretrial admissions, that he had made as many as, if not more than, four such trips per month. In an affidavit supporting his motion for a summary judgment, Crooker reduced this to an interstate trip no more than once every other week on the average. At the trial, Crooker further reduced this to only ten or eleven interstate trips during the thirty-four months of his employment with Sexton.

Richard J. Sexton, president of defendant corporation, testified that Crooker made an interstate driving trip almost every week during his employment. The district court did not attempt to resolve this factual issue, but held that a decision for the plaintiff was appropriate, even assuming the correctness of Mr. Sexton's testimony as to the amount of interstate driving done by Crooker.

■ If, under this evidence, the Secretary of Transportation, pursuant to 49 U.S.C. § 304(a)(3), had the power to establish qualifications and maximum hours of service with respect to Crooker's interstate driving for Sexton, Crooker is not entitled to the overtime

included in the terms 'common carrier by motor vehicle' or 'contract carrier by motor vehicle', who or which transports in interstate or foreign commerce by motor vehicle property of which such person is the owner, lessee, or bailee, when such transportation is for the purpose of sale, lease, rent, or bailment, or in furtherance of any commercial enterprise."

compensation benefits provided by 29 U.S.C. § 207(a)(1). As the Supreme Court pointed out in Levinson v. Spector Motor Service, 330 U.S. 649, 661, 67 S. Ct. 931, 91 L.Ed. 1158 (1947), this interaction of these two statutes results from the policy of Congress to preserve intact the federal safety program for interstate motor carriers. The courts are to give full effect to the safety program even to the corresponding exclusion of certain employees from the benefits of the compulsory overtime pay provisions of the Fair Labor Standards Act. *Levinson*, 330 U.S. at 662, 677, 67 S.Ct. 931.

Without doubt, the Secretary of Transportation had the power to establish qualifications and maximum hours of service applicable to Crooker if, under the evidence, a substantial part of Crooker's interstate activities affected the safety of interstate motor carrier operations. Pyramid Motor Freight Corp. v. Ispass, 330 U.S. 695, 708, 67 S.Ct. 954, 91 L.Ed. 1184 (1947); *Levinson*, 330 U.S. at 673–674, 681, 685, 67 S.Ct. 931.

In deciding whether a substantial part of Crooker's interstate activities affected the safety of interstate motor carrier operations, we are not here concerned with the perplexing problem of whether activities incidental to interstate motor transportation, such as that performed by loaders or automobile mechanics, affect the safety of operations. Here Crooker's only significant connection with Sexton's interstate operations was as a driver. It is obvious that one who drives a vehicle in interstate commerce directly affects the safety of such operations as long as he is driving.

■ The district court held that there was no exemption under section 213(b)(1) because Crooker's interstate trips did not constitute a substantial part of his total employment activity for Sexton. However:

"[i]t is the character of the activities rather than the proportion of either the employee's time or his activities that determines the actual need for the Commission's power to establish reasonable requirements with respect to qualifications, maximum hours of service, safety of operation and equipment."

*Levinson*, 330 U.S. at 674–675, 67 S.Ct. at 944. *See also*, Morris v. McComb, 332 U.S. 422, 431–432, 68 S.Ct. 131, 92 L.Ed. 44 (1947). This construction of section 213(b)(1) puts "safety first, as did Congress." *Levinson*, 330 U.S. at 677, 67 S.Ct. 931.

This construction is not contrary to Pyramid Motor Freight Corp. v. Ispass. There the Court was concerned with the question of whether the substantial part of the employees' activities which affected interstate commerce also affected safety. 330 U.S. at 708–709, 67 S.Ct. 954. This is a different issue than the question of whether a substantial part of all the employee's activities interstate and intrastate, affect interstate commerce. While the Court in *Pyramid Motors* reserved the question of the Commission's power to prescribe requirements for employees whose interstate activities did not substantially affect safety, the total employment test was rejected just as it was in *Levinson*, 330 U.S. at 707, 67 S.Ct. 931.

■■ The correct test for determining whether there is an exemption under section 213(b)(1) is set out in Yellow Transit Freight Lines, Inc. v. Balven, 320 F.2d 495, 498 (8th Cir. 1963):

"The factual question to be decided is not whether a substantial part of Balven's duties affected the safety of operations but, rather, whether any of Balven's duties had a *substantial effect* on motor vehicle safety." (Emphasis in original.)[3]

Crooker surely met this test. His interstate activity was as a driver, and thus directly affected the safety of operations. It follows that Crooker was subject to regulation by the Secretary of

---

3. Crooker himself, on page 3 of his brief on appeal, subscribed to this test.

Transportation as to qualifications and maximum hours of service and thus was not entitled to the benefits of the overtime compensation provisions of the Fair Labor Standards Act.

In reaching this conclusion we have not overlooked Crooker's argument that such a strict reading of section 213(b)(1) unfairly withholds the overtime benefits of the Fair Labor Standards Act from employees who engage in a slight amount of activity affecting the safety of interstate operations. While this argument strikes a sympathetic chord, the fact is that it was made long ago by Mr. Justice Murphy, dissenting in Morris v. McComb, 332 U.S. 422, 438, 68 S.Ct. 131, 92 L.Ed. 44 (1947), and proves unavailing.

From what is said above, it follows that we are in disagreement with the district court's conclusion that the extent to which Crooker's interstate activity affected the safety of interstate motor operations was *de minimis. See* Morris v. McComb, 332 U.S. 422, 68 S. Ct. 131, 92 L.Ed. 44 (1947), where the carrier operated in interstate commerce only three to four percent of the carrier's total carrier service. The *de minimis* rule has been applied in this context where the employee's connection with anything affecting interstate motor carrier operations was so indirect and casual as to be trivial. *See* Pyramid Motor Freight Corp. v. Ispass, 330 U.S. 695, 708, 67 S.Ct. 954, 91 L.Ed. 1184 (1947). The activities of one who drives in interstate commerce, however frequently or infrequently, are not trivial. Such activities directly affect the safety of motor vehicle operations. We are not in agreement with the contrary views expressed in Wirtz v. C & P Shoe Corp., 336 F.2d 21, 29 (5th Cir. 1964); and Coleman v. Jiffy June Farms, 324 F.Supp. 664, 669 (S.D.Ala.1970).

Sexton has called attention to footnote 13 in Morris v. McComb, 332 U.S. 422, 434, 68 S.Ct. 131, 92 L.Ed. 44 (1947), in which the Supreme Court referred to an Interstate Commerce Commission ruling pertaining to private carriers (such as Sexton) engaged in both interstate and intrastate commerce. The ruling was to the effect that if a driver for such a carrier does not drive or operate a truck in the transportation of property in interstate or foreign commerce for an entire week, he is not subject to the Commission's safety regulation during that week.

The Supreme Court expressed no opinion as to whether, during that week, the driver is subject to the overtime provisions of the Fair Labor Standards Act. But as appellant points out, the United States Department of Labor has clarified its position in such a case, in D.O. L.Int.Bull. 29 C.F.R. § 782.2, November 22, 1968, as follows:

"If in particular workweeks other duties are assigned to him which result, in those workweeks, in his performance of activities directly affecting the safety of operation of motor vehicles in interstate commerce on the public highways, the exemption will be applicable to him in those workweeks, but not in the workweeks when he continues to perform the duties of the non-safety-affecting job."

Sexton indicates that the trial court could appropriately have applied this formula in the case now before us. The trial court did not do so because no such suggestion was made in that court and because that court held that Crooker was completely unaffected by the transportation exemption. As indicated above, the trial court was mistaken in so concluding.

Crooker argues in his brief on appeal that Sexton is estopped from urging that the exemption be applied at least to particular workweeks, because no such suggestion was made in the trial court. In view of the tenor of this opinion, however, we feel certain that Crooker will not now object to trial court consideration of the question of whether, under the principles stated above, there are some weeks as to which the transportation exemption does not stand in the

way of applying the overtime compensation provisions of the Fair Labor Standards Act.

We accordingly reverse the judgment and remand the cause for trial court determination of whether there are some weeks during Crooker's employment by Sexton during which Crooker performed no interstate driving for Sexton. As to any such weeks, the transportation exemption does not apply and overtime compensation, if any be due, may be awarded. As the employer, Sexton was in the best position to maintain records as to this, and should therefore have the burden of proof to establish the particular weeks during which Crooker performed some interstate driving. Proof on either side, however, shall not be limited to written records.