Malcolm GERARD, Plaintiff,

v.

NORTHERN TRANSPORTATION,
LLC, Defendant.

No. 01–CV–30–B.

United States District Court,
D. Maine.

May 24, 2001.

Donald F. Fontaine, Fontaine & Beal, P.A., Portland, ME, for plaintiff.

Thomas H. Somers, Hoff, Curtis, Pacht, Cassidy & Frame, Portland, ME, for defendant.

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS

SINGAL, District Judge.

Before the Court is Defendant's Motion to Dismiss (Docket # 8), Plaintiff's Motion for Attachment and Trustee Process (Docket # 2), Plaintiff's Motion to Strike Section II of Defendant's Memorandum of Law in Reply to Plaintiff's Opposition to Motion to Dismiss (Docket # 16), and Plaintiff's Motion for Leave to File a Sur-Reply Memorandum (Docket # 16).

Defendant does not state under which rule it moves for dismissal, but based on the tone of the filings, the Court assumes that Defendant filed its Motion pursuant to Rule 12(b)(6). For the reasons discussed below, the Court DENIES Defendant's Motion to Dismiss and the Court DENIES Plaintiff's Motion for Attachment and Trustee Process. Based on these rulings, the Court finds that Plaintiff's Motion to Strike and Motion for Leave are MOOT.

### I. MOTION TO DISMISS

#### A. Standard of Review

Generally, a court may dismiss a claim under Fed.R.Civ.P. 12(b)(6) only if it clearly appears that, on the facts alleged in the complaint, the plaintiff cannot recover on any viable theory. *See Gonzalez–Morales v. Hernandez–Arencibia,* 221 F.3d 45, 48 (1st Cir.2000). When considering a motion to dismiss, a court must accept as true all of a plaintiff's well-pleaded factual averments and indulge every reasonable inference in the plaintiff's favor. *See Correa–Martinez v. Arrillaga–Belendez,* 903 F.2d 49, 52 (1st Cir.1990).

■ When considering a motion to dismiss, the Court should look only to the contents of the complaint. Both parties, however, have filed affidavits and have argued about facts of the case extrinsic to

the Complaint. When the parties submit evidence in such a fashion, a court sua sponte may convert a 12(b)(6) motion to a Rule 56 motion for summary judgment. *See, e.g., Whiting v. Maiolini*, 921 F.2d 5, 6 (1st Cir.1990). In this case, however, each party has submitted evidence in a disorganized manner, responding to some of the opposing party's allegations yet ignoring others, leaving the Court in a quandary as to which averments the Court should view as undisputed.

When the factual record is sketchy, the Court prefers to rely on the procedural mechanisms commensurate with a Rule 56 motion, whereby the parties must file statements of material fact which help clarify to the Court what disputes present genuine issues of fact. *See* Local Rule 56. In this case, the parties have not filed any statements of material facts. Therefore, the Court declines to convert the Motion to Dismiss into a motion for summary judgment. Pursuant to the 12(b)(6) standard of review, the Court adumbrates the facts of the case below.

### B. Background

Plaintiff Malcolm Gerard was an employee of Defendant Northern Transportation, LLC, from 1997 to 2000. As an employee of Northern Transportation, Gerard regularly worked more than forty hours per week. No matter how many hours that Gerard worked, Northern Transportation paid him the same hourly rate. Gerard complains that during weeks that he worked more than forty hours, he was entitled to overtime compensation at an increased hourly rate.

### C. Discussion

■ Plaintiff argues that by refusing to compensate him for the overtime hours that he worked, Defendant has violated the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and Maine's minimum wage statutes, 26 M.R.S.A. § 661 *et seq.* Pursuant to both federal and state law, the general rule is that if an employee works more than forty hours in a week, the employer must pay the employee overtime compensation of no less than 150% the usual hourly wage. *See* 29 U.S.C. § 207(a)(1); 26 M.R.S.A. § 664(3).

■ In his Complaint, Plaintiff avers that he was an employee of Defendant, that he often worked more than forty hours in a week, but that Defendant never paid him an overtime wage. Therefore, Plaintiff has stated a prima facie case of a violation of the FLSA and Maine's minimum wage laws. In rebuttal, Defendant argues that exceptions to these overtime laws apply. Intrinsic in this argument, however, is heavy reliance upon numerous factual averments. At this stage in the proceedings, the Court is not inclined to consider disputed factual allegations. Therefore, Defendant's arguments fail to convince this Court to dismiss Plaintiff's claims as a matter of law.

### II. MOTION FOR ATTACHMENT

Plaintiff has moved pursuant to Rule 64 for a writ of attachment against the goods or estate of Defendant in the amount of $26,055.00 as prejudgment security. The Court first should consider "the law of the state in which the district court is held," unless federal or constitutional law dictates otherwise. *See* Fed.R.Civ.P. 64. Under Maine law, an order attaching a defendant's property "may be entered only after notice to the defendant and hearing and upon a finding by the court that it is more likely than not that the plaintiff will recover judgment, including interest and costs, in an amount equal to or greater than the aggregate sum of the attachment...." Maine Rule 4A(c), *quoted in So. Me.*

*Props., Inc. v. Johnson,* 724 A.2d 1255, 1257 (Me.1999).

 Plaintiff argues that he is entitled to a prejudgment attachment because it is more likely than not that he will be successful in this case. As mentioned above, however, Defendant has raised affirmative defenses that it is exempted from both the FLSA and Maine's minimum wage statutes. When considering motions for dismissal and motions for attachment, courts employ different standards of review. A motion to dismiss is dispositive, and therefore carries with it a fairly high burden of persuasion that a moving party must meet in light of the court's duty to accept all of a plaintiff's factual averments. On the other hand, to obtain an attachment, a plaintiff merely needs to demonstrate that he probably will win his lawsuit. Thus, in contrast to the Court's treatment of the record when analyzing Defendant's Motion to Dismiss, the Court will consider some of the factual allegations that have been presented to the Court in its determination of whether attachment is warranted.

## A. Additional Facts

 From 1997 to 2000, Gerard worked for Northern Transportation as a truck driver. During his employment, Gerard spent most of his work hours transporting eggs across state borders. Apparently, about one-third of the time Gerard carried goods solely within the State of Maine. It is unclear when Gerard carried eggs across state lines and when he transported goods only within Maine.

## B. Fair Labor Standards Act

Regarding which agencies regulate employment practices for different categories of workers, Congress has established a boundary line dividing the territories of authority of the Department of Labor versus the Department of Transportation.

Pertinent to this case, the FLSA, which is administered by the Department of Labor, establishes general minimum wage requirements for the nation's workers, but specifies that such rules do not apply to employees whose terms of employment are subject to regulation by the Motor Carrier Act ("MCA"), 49 U.S.C. § 13101 *et seq.* *See* 29 U.S.C. § 213(b)(1). Administered by the Department of Transportation, the MCA regulates the employment of motor carriers, e.g. truck drivers, who transport goods across state lines. *See id.* §§ 13102(12), 13102(13), 13501(1). Neither the MCA nor the policy of the Department of Transportation requires employers to pay motor carriers overtime compensation.

This arrangement has created a dichotomy: employees regulated by the FLSA are entitled to overtime pay, but motor carriers who transport goods across state lines are not entitled to overtime compensation. This apparently bright-line rule, however, loses its luster when courts are presented with the dilemma of an employee whose work hours are divided between both interstate transport of goods and solely in-state work. *See, e.g., Morris v. McComb,* 332 U.S. 422, 68 S.Ct. 131, 92 L.Ed. 44 (1947); *Brennan v. Schwerman Trucking Co.,* 540 F.2d 1200 (4th Cir.1976).

In *Crooker v. Sexton Motors, Inc.,* 469 F.2d 206, 210–11 (1st Cir.1972), the First Circuit followed a 1968 Department of Labor regulation establishing that the MCA exemption should be applied week-by-week. *See id.* (citing 29 C.F.R. § 782.2). The plaintiff in *Crooker* worked at an automobile dealership in New Hampshire where his primary duties were to clean and polish cars. On occasion, his employer would send him to another state to pick up parts or cars and to transport them back to New Hampshire. The plaintiff argued that he was entitled to overtime compensation for every week that he worked for the

defendant, and the trial court agreed. Remanding, the First Circuit ruled that the MCA exemption applied to those weeks during which the plaintiff transported goods across state lines, but not for weeks during which the plaintiff worked solely within New Hampshire. *See id.* Thus, for weeks when the plaintiff traveled across state lines, he was not entitled to an increased overtime rate, but he was entitled to overtime compensation for the weeks that he remained in state. *See id.* The court based this decision on language in the Labor regulation, 29 C.F.R. § 782.2, which remains effective since its adoption in 1968, as amended in 1971. *See id.*

Defendant argues that the Court should ignore this thirty year-old case because the Labor regulation has been trumped by a twenty year-old interpretation that was promulgated by the Department of Transportation. For determining whether the MCA exemption applies to an employee, the Department of Transportation's "Notice of Interpretation" states that the appropriate query is whether an employee has transported goods in interstate commerce during a period of four months, instead of one week. *See* 46 Fed.Reg. 37902 (1981).[1] According to this interpretative rule, *see* 5 U.S.C. § 553(b)(A), if a worker carries goods across state lines, the MCA exemption applies to that worker for a period of four months. Moreover, Defendant argues that certain statements made by officials within the Department of Labor reveal that the Department of Labor has acquiesced to the Department of Transportation's four-month interpretation. (*See* Docket # 8, Attachs. 4, 5.)

In rebuttal, Plaintiff argues that the Court should not defer to the four-month interpretation because federal agencies' interpretative rules do not constitute binding law. *See, e.g., Chrysler Corp. v. Brown,* 441 U.S. 281, 301–03, 99 S.Ct. 1705, 60 L.Ed.2d 208 (1979). Generally, a court should defer to an agency's reasonable interpretation of a statute or regulation. *See, e.g., Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843–44, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). When such an interpretation, however, conflicts with binding law, such as a regulation adopted after the notice-and-comment process established by the Administrative Procedure Act, 5 U.S.C. § 553, the Court need not give credence to the contrary interpretation. *See, e.g., Am. Mining Congress v. Mine Safety & Health Admin.,* 995 F.2d 1106, 1109–1110 (D.C.Cir.1993). In short, an interpretative rule may interpret an ambiguity or lacuna in the law, but it cannot alter or amend existing law. *See, e.g., Warder v. Shalala,* 149 F.3d 73, 80 (1st Cir.1998).

In any event, both parties overlook another portion of the disputed Labor regulation, not addressed by *Crooker,* which states that if an employer regularly or from time to time calls on a driver to carry goods over state lines, then the MCA exemption applies to "all workweeks when he is employed at such job." 29 C.F.R. § 782.2(b)(3). In *Crooker,* the plaintiff worked primarily as a car washer and polisher, who only sometimes acted as a driver of goods. In the present case, it is undisputed that Plaintiff's primary job was as a truck driver. Plaintiff avers that during each year from 1997 to 2000, he spent a number of weeks transporting goods solely within Maine. To this, Defendant avers that although Plaintiff may not have driven out of state every week, "Plaintiff's assignments were random and

---

**1.** Apparently, this interpretative statement has not been included in the Code of Federal Regulations.

depended solely on where we had deliveries and when customers required those deliveries. On any given day Plaintiff could have been assigned to any out of state route depending on the needs and requirements of customers." (Declaration of Bruce Ames ¶ 15 (Docket # 8, Attach. I).)

■ Plaintiff has not responded to this allegation. If such an averment is true, that Defendant regularly called on Plaintiff to transport goods across state borders, then, according to the regulation upon which Plaintiff relies, the MCA exemption applies and Plaintiff would not be entitled to overtime compensation pursuant to the FLSA. The burden is on the Plaintiff to show that an attachment is warranted. Defendant, however, has presented a sound affirmative defense supported by an affidavit. Because Plaintiff has not disputed this affidavit, he has failed to demonstrate that it is more likely than not that he will prevail on the merits of the case.

■ In the alternative, Plaintiff argues that his Maine state law claim is more likely than not to be successful. The success of his state law claim, however, is contingent upon the success of his federal claim. The Court is hearing this case pursuant to federal question subject matter jurisdiction rather than diversity jurisdiction. If the federal claim fails, the Court most likely would dismiss the state law claim for lack of jurisdiction. *See, e.g., Mercado–Garcia v. Ponce Fed. Bank,* 979 F.2d 890, 896 (1st Cir.1992). Therefore, because Plaintiff has failed to show that the federal FLSA claim is more likely than not to succeed, he consequently has failed to demonstrate that his Maine law claim is more likely than not to succeed. Based on the foregoing, the Court finds that an attachment would be inappropriate.

## III. CONCLUSION

For the reasons discussed above, the Court DENIES Defendant's Motion to Dismiss (Docket # 8). In addition, the Court DENIES Plaintiff's Motion for Attachment and Trustee Process (Docket # 2). Thus, the Court finds that Plaintiff's Motion to Strike a portion of Defendant's Reply Brief (Docket # 16) and Plaintiff's Motion for Leave to File a Sur–Reply Memorandum (Docket # 16) are MOOT.

SO ORDERED.